# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 82

Darilyn Baker, individually, and on behalf
of all persons similarly situated,

Plaintiff and Appellant

v.

Autos, Inc., a North Dakota Corporation,
d/b/a Global Auto; RW Enterprises Inc.,
a North Dakota Corporation; Randy Westby,
an individual, James Hendershot, an individual,
and Robert Opperude, an individual,

Defendants and Appellees

No. 20180238

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Gary H. Lee, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Larry M. Baer (argued), West Des Moines, IA, and Robert G. Ackre (on brief), Cando, ND, for plaintiff and appellant.

Bryan L. Van Grinsven, Minot, ND, for defendants and appellees RW Enterprises, Inc. and Randy Westby.

Sean F. Marrin (argued) and Kraig A. Wilson (on brief), Grand Forks, ND, for defendants and appellees Autos, Inc. d/b/a Global Auto, Robert Opperude and James Hendershot.

**VandeWalle, Chief Justice.**

[¶1]    Darilyn Baker, individually and on behalf of a class of more than 500 persons similarly situated, appealed from a judgment dismissing her class action against Autos, Inc., doing business as Global Autos, Robert Opperude, James Hendershot, RW Enterprises, Inc., and Randy Westby for claimed violations of the North Dakota Retail Installment Sales Act, N.D.C.C. ch. 51-13, and state usury laws and from an order denying her motion to amend the judgment.  Baker argues the retail sellers failed to make required disclosures of certain finance charges and late fees in retail installment contracts and they lost their regulated lender status and were subject to state usury laws.  We conclude the retail installment contracts failed to disclose loan fees as finance charges, and we reverse and remand.

I

[¶2]    In 2007, Baker purchased a used vehicle from Global Autos by trading in her vehicle and financing the balance due through Global Autos, a company owned by Opperude and Hendershot.  In conjunction with the purchase, Baker executed two documents, a "buyer's order" and a "retail installment contract and security agreement."  The buyer's order included a right hand column that, from top to bottom, identified a cash price of $6990, a trade allowance of $3500, a difference of $3490, a motor vehicle excise tax of $174.50, a line for license and title fees that was blank, a document administration fee of $195, an amount owing on trade of $1411.44, a loan fee of $200, and a total balance of $5470.94.  The buyer's order identified the buyer as Baker, the vehicle purchased, and the date of the purchase, and was signed twice by Baker.  One signature was for an odometer disclosure statement and the other signature was under a statement that "[t]he front and back of this Order compromise the entire agreement affecting this purchase and no other agreement or understanding

1

of any nature concerning same has been made or entered into, or will be recognized. I hereby certify that no credit has been extended to me for the purchase of this motor vehicle except as appears in writing on the face of this agreement. I have read the matter printed on the back hereof and agree to it as part of the order the same as if it were printed above my signature."

[¶3]   The "Retail Installment Contract and Security Agreement" included a statement identifying the purchased vehicle as collateral for installment payments and a heading in the middle of the page for "truth in lending disclosures." Immediately below that heading were five boxes from left to right identifying an annual percentage rate of 25%, a finance charge of $1941.61, the amount financed of $5470.94, the total payments of $7412.55, and the total sale price of $7412.55. The amount financed was described as "[t]he amount of credit provided to you or on your behalf" and was the same amount as the total balance from the buyer's order, which included amounts for the "loan fee" and the "document administration fee." Immediately below the truth in lending disclosures were boxes stating the number of monthly payments as 30, the amount of each monthly installment payment as $247.08, the due date for each monthly payment as the first of each month, and a late charge of $25 for payments more than 10 days late.

[¶4]   Baker was late in making some of her required monthly payments under the retail installment contract and her vehicle was repossessed. Before Baker defaulted on her loan, Global Autos assigned her retail installment contract to RW Enterprises, which was owned by Westby. After the car was repossessed, Baker sued Global Autos, RW Enterprises, and their individual owners, alleging they violated state statutory requirements for retail installment contracts and charged usurious interest rates. Baker alleged a willful violation of the Retail Installment Sales Act in failing to accurately disclose the annual percentage rate and the finance charges incident to investigating and contracting for the extension of credit. Baker also alleged a willful violation of the Retail Installment Sales Act by contracting to charge a late fee in excess of the statutory maximum of $10.

2

[¶5]   Baker moved for class action certification for all purchasers who, subject to the applicable statute of limitations, may have been injured as a result of the defendants' business practices. The district court denied Baker's motion for class certification, and a majority of this Court reversed the denial and remanded for reconsideration of her motion. *Baker v. Autos, Inc.*, 2015 ND 57, 860 N.W.2d 788.

[¶6]   The district court subsequently granted class certification consisting of more than 500 retail installment buyers, and Baker thereafter moved for partial summary judgment on multiple issues. The court granted the motion in part, and denied it in part. The court rejected Baker's assertion she was entitled to judgment as a matter of law on her claim involving the failure to disclose the document administration fee and loan fee as finance charges. The court concluded the "buyer's order" and the "retail installment contract and security agreement" must be construed together as one retail installment contract and, reading those documents together, the court declined to conclude as a matter of law that Global Autos failed to disclose either fee. The court ruled all class members who were charged and paid a $25 late fee on any delinquent installment payment due under their retail installment contracts were entitled to a refund because the amount of that late fee exceeded the maximum allowable late fee of $10 authorized by N.D.C.C. § 51-13-02(2)(e). The court decided the excessive late fee was not an additional finance charge and did not deprive the defendants of protection as a regulated lender under the state's usury laws in N.D.C.C. ch. 47-14. The court said N.D.C.C. § 51-13-07 provided the remedy for a violation of the excessive late fee requirement and denied Baker's motion for partial summary judgment on that issue. The court reserved ruling on which defendant was liable for repayment of any excessive late fees actually paid by any buyers.

[¶7]   The parties thereafter stipulated to certain legal and factual issues and for certification under N.D.R.Civ.P. 54(b). The district court adopted the stipulation and certified the partial summary judgment as final under N.D.R.Civ.P. 54(b). The stipulated partial summary judgment determined the imposition of a $25 late fee violated state law and all class members who were actually assessed and paid a late

3

fee in excess of the statutory maximum of $10 were entitled to a refund of all late fees paid. The judgment identified issues remaining to be determined as: (1) the identity of class members entitled to recover; (2) the individual liability of Hendershot and Opperude; and (3) the potential liability of RW Enterprises and Westby. The court's partial summary judgment dismissed all of Baker's other claims. On appeal we held the Rule 54(b) certification was improvidently granted and dismissed Baker's appeal from the partial summary judgment. *Baker v. Autos, Inc.*, 2017 ND 229, 902 N.W.2d 508.

[¶8]   Baker, individually and on behalf of the class, thereafter waived the right to recover any and all sums charged and collected in excess of the $10 statutory maximum late fee on delinquent payments. The district court entered judgment dismissing with prejudice all of Baker's claims. The court thereafter denied Baker's motion to amend the judgment under N.D.R.Civ.P. 59.

II

[¶9]   Baker argues the retail installment contracts did not disclose the "document administration fee" and the "loan fee" as finance charges and did not comply with the finance charge disclosure requirements mandated by the Retail Installment Sales Act in N.D.C.C. § 51-13-02. Baker argues that because the retail sellers failed to satisfy those disclosure requirements, they are not entitled to regulated lender status under N.D.C.C. § 51-13-03(1) and are subject to state usury laws in N.D.C.C. § 47-14-09. Baker argues that omitting known costs of obtaining credit from the disclosed amount of finance charges in a retail installment contract and that contracting to charge and collect an excessive late fee are willful violations of the Retail Installment Sales Act.

[¶10]  Our analysis of Baker's arguments requires review of the statutory provisions for retail installment contracts in N.D.C.C. ch. 51-13. Statutory interpretation is a question of law, fully reviewable on appeal. *Zajac v. Traill Cty. Water Res. Dist.*, 2016 ND 134, ¶ 6, 881 N.W.2d 666. The primary objective in interpreting a statute is to determine the intention of the legislation. *Id.* Words in a statute are given their

4

plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, that language is not to be disregarded under the pretext of pursuing its spirit. N.D.C.C. § 1-02-05. The language of a statute must be interpreted in context and according to rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1-02-03 and 1-02-38(2). We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4).

[¶11] Chapter 51-13, N.D.C.C., is North Dakota's codification of the Retail Installment Sales Act. Section 51-13-01(10), N.D.C.C., defines a "retail installment contract" as:

> an agreement, entered into in this state, pursuant to which the title to or a lien upon the personal property, which is the subject matter of a retail installment sale, is retained or taken by a retail seller from a retail buyer as security, in whole or in part, for the buyer's obligation, or a contract for the bailment or leasing of personal property by which the bailee or lessee contracts to pay as compensation for its use a sum substantially equivalent to or in excess of its value and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of the personal property upon full compliance with the terms of the contract.

[¶12] Section 51-13-02, N.D.C.C., describes the requirements for a retail installment contract and specifies that the "contract must contain the amount of the finance charge, if any." N.D.C.C. § 51-13-02(2)(c)(8). Under N.D.C.C. § 51-13-02(2)(e), a retail installment contract may provide for payments by a buyer of a delinquency and collection charge on each installment payment more than 10 days late in an amount equal to the lesser of 10 percent of the delinquent installment payment or 10 dollars.

[¶13] A finance charge is defined to mean the amount the buyer contracts to pay or pays for the privilege of purchasing personal property to be paid in installments and does not include amounts charged for insurance premiums, delinquency charges,

5

attorney's fees, court costs, collection expenses, or official fees. N.D.C.C. § 51-13-01(4). Section 51-13-03(2) and (4), N.D.C.C., describe limitations on finance charges and provide:

> 2.    The finance charge must be computed on the amount financed as determined under subdivision c of subsection 2 of section 51-13-02. This finance charge may be precomputed on the amount financed calculated on the assumption that all scheduled payments will be paid when due and the effect of prepayment is governed by the provisions on rebate upon prepayment.

> 4.    The finance charge must be inclusive of all charges incident to investigating and making the contract, and for the extension of the credit provided for in the contract and no fee, expense, or other charge whatsoever may be taken, received, reserved, or contracted for except as provided in this section and in subdivision e of subsection 2 of section 51-13-02 and for those items expressly provided for in the retail installment contract as set forth in subdivision c of subsection 2 of section 51-13-02.

[¶14] In a retail installment contract, the "amount financed" means the cash price of the personal property subject to the sale, plus the amounts, if any, included in the sale for insurance and official fees, minus the buyer's downpayment in money or goods. N.D.C.C. § 51-13-01(1). "Official fees" are defined to mean the filing or other fees required by law to be paid to public offices to perfect the lien retained by the seller and to file or record a release, satisfaction, or discharge of the contract, and license, certificate of title, and registration fees imposed by law. N.D.C.C. § 51-13-01(7).

[¶15] Under N.D.C.C. § 51-13-03(1), a retail seller who complies with the disclosure provisions of N.D.C.C. ch. 51-13 is deemed a regulated lender under N.D.C.C. § 47-14-09, and the usury provisions of that section do not apply to loans by a lending institution that is regulated or funded by a state or federal agency. N.D.C.C. § 47-14-

09(2)(e). At the time of Baker's retail installment contract,[1] N.D.C.C. § 51-13-07 described penalties under the Retail Installment Sales Act and provided:

> Any person who willfully violates this chapter is guilty of a class A misdemeanor. A willful violation of section 51-13-02 or 51-13-03 by any person bars that person's recovery of any finance charge or delinquency or collection charge on the retail installment contract involved.

[¶16] Here, the district court concluded the disclosure requirements of the Retail Installment Sales Act were not violated. The court said the "buyer's order" and the "retail installment contract and security agreement" were executed contemporaneously and those documents, when read together, included the "document administration fee" and the "loan fee." The court thus determined the loan fee and the document administration fee were disclosed in the retail installment contract.

[¶17] The document administration fee and loan fee were disclosed as part of the principal balance for the amount financed when the contemporaneously executed buyer's order and retail installment contract and security agreement are construed together. *Nichols v. Goughnour*, 2012 ND 178, ¶ 13, 820 N.W.2d 740 (stating contemporaneously executed documents by the same parties in the course of the same

---

[1]Section 51-13-07, N.D.C.C., was amended in 2015 N.D. Sess. Laws ch. 351, § 2, and now provides:

> Any person who willfully violates this chapter is guilty of a class A misdemeanor. A willful violation of section 51-13-02 or 51-13-03 by any person bars that person's recovery of any finance charge or delinquency or collection charge on the retail installment contract involved. A state's attorney or the attorney general may enforce this chapter. The attorney general in enforcing this chapter has all the powers provided in this chapter and chapter 51-15 and may seek all remedies in this chapter and chapter 51-15. A violation of this chapter constitutes a violation of chapter 51-15. The remedies, duties, prohibitions, and penalties of this chapter are not exclusive and are in addition to all other causes of action, remedies, and penalties in chapter 51-15, or otherwise provided by law.

7

transaction and concerning the same subject matter may be construed together). *See* N.D.C.C. § 9-07-07 (stating several contracts relating to the same matters between the same parties and made as part of substantially one transaction are to be taken together). Baker nevertheless argues those two fees are finance charges for securing credit for the sale but were identified in the documents as part of the amount financed for the sale and were not included in the amount of the finance charge of $1941.61. Baker argues those charges were misidentified or mislabeled on the relevant documents and those charges are really hidden finance charges that are paid by buyers purchasing on credit but are not paid by buyers purchasing for cash. Baker claims the amounts for those fees were not included in the total for finance charges on the retail installment contract.

[¶18] When the provisions of N.D.C.C. §§ 51-13-01(4) and 51-13-03 are construed together, those provisions explain that finance charges are computed on the amount financed but that finance charges include all charges incident to investigating, making, and extending credit for a retail installment sale, as opposed to a cash sale. Under those provisions, finance charges do not include a delinquency and collection charge, or official fees for license, certificate of title, and registration fees imposed by law. Although delinquency and collection charges for installment payments must be stated in a retail installment contract and a contract charging more than the statutory maximum for those fees violates N.D.C.C. ch. 51-13, those delinquency and collection charges are not finance charges and need not be disclosed as such.

[¶19] Here, the parties do not dispute that the loan fee is a finance charge under N.D.C.C. ch. 51-13. According to Opperude, license and title transfer fees were factored into the document administration fee. License and title transfer fees are official fees within the meaning of N.D.C.C. § 51-13-01(7). They are not included in the definition of finance charges under N.D.C.C. § 51-13-01(4) or the inclusive language of N.D.C.C. § 51-13-03(4) and may be included in the amount financed under N.D.C.C. § 51-13-01(1). It is not clear what, if any, other charges were factored into that $195 "document administration fee" for Baker. For purposes of our

8

decision in this case, however, it is sufficient that the parties do not dispute that the "loan fee" is a finance charge under the language of N.D.C.C. §§ 51-13-01(4) and 51-13-03(4).  Although the amount of the loan fee was stated on the "buyer's order," it was included in the total balance due on that document and transferred to the "retail installment contract and security agreement" under the category for the "amount financed."  The loan fee was not included in the category for the amount of "finance charges" and was not disclosed as a finance charge in the amount identified as "finance charges."  The retail installment contracts did not disclose the loan fee as a finance charge and did not comply with the disclosure requirements of N.D.C.C. § 51-13-02(2)(c)(8).

[¶20]  We conclude the district court erred in determining the retail installment contracts complied with the disclosure requirements for finance charges.  Because the district court erroneously concluded the retail installment contracts complied with the disclosure requirements of N.D.C.C. ch. 51-13, the court did not address issues about a willful violation of the statute and the remedies available for noncompliance with those disclosure requirements.  We reverse the judgment and remand for consideration of those issues.

### III

[¶21]  We reverse the judgment dismissing Baker's claims and remand for further proceedings.

[¶22]  Gerald W. VandeWalle, C.J.
    Lisa Fair McEvers
    Daniel J. Crothers
    Jon J. Jensen
    Jerod E. Tufte

9