# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

2020 ND 167

Duane Schroeder and Lynae Schroeder,
parents of Brooke Schroeder, and Lynae
Schroeder as Personal Representative
of the Estate of Brooke Schroeder,                Plaintiffs and Appellants

v.

State of North Dakota,                           Defendant and Appellee

No. 20190374

Appeal from the District Court of Barnes County, Southeast Judicial District, the Honorable Mark T. Blumer, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Jason R. Vendsel (argued) and Rheider W. McCormick (on brief), Minot, N.D., for plaintiffs and appellants.

James E. Nicolai, Deputy Solicitor General, Office of the Attorney General, Bismarck, N.D., for defendant and appellee.

**Tufte, Justice.**

[¶1]   Duane and Lynae Schroeder, parents of Brooke Schroeder, and Lynae Schroeder, as personal representative of the Estate of Brooke Schroeder, appeal from a summary judgment dismissing their action against the State of North Dakota related to a car accident, which resulted in their daughter's death. The Schroeders argue the district court erred in granting summary judgment and determining their claims were precluded because the State was immune from liability under statutory public duty and snow and ice immunities. We conclude the district court properly determined statutory immunity precluded the Schroeders' claims. We affirm.

I

[¶2]   On January 8, 2017, Brooke Schroeder was driving a vehicle eastbound on Interstate 94 in Barnes County. Before crossing an overpass at 109th Avenue Southeast, the vehicle drifted out of the eastbound passing lane, hit a snowbank adjacent to the guardrail on the overpass, and vaulted over the guardrail. Brooke Schroeder was injured in the accident and died.

[¶3]   The Schroeders sued the State for economic and non-economic damages, alleging the State's negligence or gross negligence in performing its winter road maintenance and snow removal obligations caused the accident, Brooke Schroeder's injuries, and ultimately her death. They claimed the snowbank adjacent to the guardrail eliminated any safety or protection provided by the guardrail and created an unreasonably dangerous condition.

[¶4]   The State moved for summary judgment, arguing various immunities apply, including the public duty and snow and ice immunities under N.D.C.C. § 32-12.2-02(3)(f) and (i), which preclude a finding of liability on the part of the State or its employees. The State claimed it may not be held liable for a claim caused by the performance or nonperformance of a public duty, in this case the duty to remove snow or ice from the roadway and adjacent guardrail. The State also claimed the narrow exception allowing claims resulting from snow or ice

1

conditions affirmatively caused by a negligent act of a state employee did not apply because the failure to remove snow or ice is a passive omission and not an affirmative act. The Schroeders opposed the motion, arguing none of the immunities apply to this action.

[¶5] After a hearing, the district court granted the State's motion. The court ruled the facts were "not effectively in dispute." The court concluded the State has a public duty to maintain the highway system, the performance of the duty to keep the highways in good and safe condition is an act for which the State may not be held liable under N.D.C.C. § 32-12.2-02(3)(f), and if the accident was caused by the plowing of roads to maintain them after winter weather, then the State is immune to any liability because it was caused by the performance of a public duty. The court also considered whether there was immunity under N.D.C.C. § 32-12.2-02(3)(i) because the claim resulted from snow or ice conditions on a highway. The court explained:

> Either: (1) the accident was caused by plowing of the snow and chemicals off the road onto the shoulder where it formed into the hardened snowbank, in which case the State (and employees) are immune as clearing the roadways [is] a public duty; or (2) the accident was caused by a negligent omission by the State in failing to remove the condition caused by the performance of that duty, in which case the snow and ice immunity applies because the danger was not created by an "affirmative" act, but rather the failure to do an act to remove the danger. It is perhaps more appropriate to state that the allegedly negligent act which led to the accident was the failure to clear the guardrail. In either case, the State is immune.

The court concluded the State was immune to liability under any viable theory of liability presented. Judgment was entered dismissing the Schroeders' complaint with prejudice.

## II

[¶6] Our standard for reviewing summary judgments is well-established:

Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Devore v. Am. Eagle Energy Corp.*, 2020 ND 23, ¶ 10, 937 N.W.2d 503 (quoting *Brock v. Price*, 2019 ND 240, ¶ 10, 934 N.W.2d 5). Generally, negligence actions involve questions of fact and are inappropriate for summary judgment. *Bjerk v. Anderson*, 2018 ND 124, ¶ 10, 911 N.W.2d 343. "Issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts." *Id.* (quoting *APM, LLLP v. TCI Ins. Agency, Inc.*, 2016 ND 66, ¶ 8, 877 N.W.2d 34).

[¶7]   Under N.D.C.C. § 32-12.2-02(3), the State and state employees may not be held liable for any of the following claims:

f. A claim relating to injury directly or indirectly caused by the performance or nonperformance of a public duty, including:
(1) Inspecting, licensing, approving, mitigating, warning, abating, or failing to so act regarding compliance with or the violation of any law, rule, regulation, or any condition affecting health or safety.

3

(2) Enforcing, monitoring, or failing to enforce or monitor conditions of sentencing, parole, probation, or juvenile supervision.

(3) Providing or failing to provide law enforcement services in the ordinary course of a state's law enforcement operations.

. . . .

i. A claim resulting from snow or ice conditions, water, or debris on a highway or on a public sidewalk that does not abut a state-owned building or parking lot, except when the condition is affirmatively caused by the negligent act of a state employee.

[¶8] Statutory interpretation is a question of law, which is fully reviewable on appeal. *Baker v. Autos, Inc.*, 2019 ND 82, ¶ 10, 924 N.W.2d 441. The primary objective in interpreting a statute is to determine the legislature's intent. *Id.* We give words their plain, ordinary, and commonly understood meaning, unless specifically defined or contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and harmonized to give meaning to related provisions. *Baker*, at ¶ 10. We give meaning to each word, phrase, and sentence. *Schulke v. Panos*, 2020 ND 53, ¶ 8, 940 N.W.2d 303. When we interpret statutes related to the same subject matter, we construe the statutes to give effect to both. *Id.* If a general provision in a statute conflicts with a special provision in the same statute or another statute, we construe the two provisions to give effect to both, if possible, but if the conflict is irreconcilable, then the special provision controls the general provision and is construed as an exception to the general provision. N.D.C.C. § 1-02-07.

A

[¶9] The Schroeders argue public duty immunity under N.D.C.C. § 32-12.2-02(3)(f) does not apply because the statute defines a number of specific duties the immunity covers and nothing in the statute indicates it is intended to cover road maintenance. They also contend the immunity should be limited to those duties in which the State has a unique duty to its citizens.

[¶10] The plain language of N.D.C.C. § 32-12.2-02(3)(f) states the State is not liable for a claim relating to injury directly or indirectly caused by the

performance or nonperformance of a public duty, including three specifically stated public duties. It does not include any language limiting the immunity to those three defined duties; rather, it states that it includes those listed duties. The word "including" "typically indicates a partial list." *Black's Law Dictionary* 912 (11th ed. 2019). Section 32-12.2-02(3)(f), N.D.C.C., gives a partial list of public duties the State may not be held liable for performing, but the immunity is not limited to those public duties specifically listed.

[¶11] Section 32-12.2-02(3)(g), N.D.C.C., specifically limits the public duty immunity by stating, "'Public duty' does not include action of the state or a state employee under circumstances in which a special relationship can be established between the state and the injured party." The statute provides four elements to determine whether a special relationship exists. *Id.* The Schroeders do not allege that a special relationship existed or that this exception to the public duty immunity applies.

[¶12] The Schroeders claim the public duty immunity should apply only when the public entity has a unique duty to the general public and it should not apply if that duty is the same for every person under the law. Citing *Fast v. State*, 2004 ND 111, 680 N.W.2d 265, the Schroeders claim every person has a duty to avoid creating unreasonably dangerous hazards and a duty to use reasonable care in their activities, these duties are not unique to the State, everyone is liable for snow removal that creates an unreasonably dangerous hazardous condition, and therefore the public duty immunity does not apply.

[¶13] Under N.D.C.C. § 24-03-02, the director of the Department of Transportation is responsible for the maintenance, protection, and control of the state highway system, and "shall patrol and keep said system in good and safe condition for general public use." The state highway system is "the system of state principal roads designated by the director of the department, the responsibility for which is lodged in the department." N.D.C.C. § 24-01-01.1(45). The State and the Department have a duty to maintain Interstate 94 and keep it in good and safe condition for general public use. We need not decide whether the public duty immunity applies only when the public entity has a unique duty to the general public, because maintaining the state

5

highway system in a safe condition is a public duty that is unique to the state department of transportation.

[¶14] In *Fast*, the plaintiffs brought a negligence action against the State, alleging negligence for failing to properly remove snow and ice accumulations from the sidewalk on a college campus and failing to warn individuals of the hazardous condition. *Fast*, 2004 ND 111, ¶ 3, 680 N.W.2d 265. The plaintiffs claimed the State was liable because it was aware water pooled in a low area of the sidewalk and froze, which created a dangerous situation. *Id.* at ¶ 12. This Court affirmed the summary judgment dismissal, holding there was no evidence in the record from which a reasonable fact finder could find the State liable. *Id.* We noted N.D.C.C. § 32-12.2-02(1) states, "The state may only be held liable for money damages for . . . an injury caused from some condition or use of tangible property under circumstances in which the state, if a private person, would be liable to the claimant." *Fast*, at ¶ 8. We said landowners have a general duty to maintain their property in reasonably safe condition in view of all the circumstances. *Id.* We held the record did not support the plaintiff's claim she fell in the area of pooled ice, and the knowledge that melting snow may run onto the sidewalk and freeze was not enough to expose the landowner to liability. *Id.* at ¶ 12. We further said it is desirable for landowners to remove snow from sidewalks but landowners should not be liable for snow removal efforts that do not create an unreasonably dangerous or more hazardous condition. *Id.* We held, given the climate in this state, it would be unreasonable and unduly burdensome to hold the State liable without some further act or omission creating an unreasonably dangerous condition. *Id.*

[¶15] This case is different from *Fast*. This Court noted in *Fast* that the parties were not relying upon the statutory snow and ice immunity. *Fast*, 2004 ND 111, ¶ 12, 680 N.W.2d 265; *see also* N.D.C.C. § 32-12.2-02(3)(f) (2003) (snow and ice immunity). The public duty immunity was not included in the statute at that time and was not applied in that case. Here, the State asserted various immunities apply, including the public duty and snow and ice immunities under N.D.C.C. § 32-12.2-02(3)(f) and (i). The State's duty to maintain the interstate is unique to the State, and the public duty immunity applies,

precluding a claim against the State for injuries directly or indirectly caused by the performance or nonperformance of that duty.

B

[¶16] The Schroeders argue the district court erred in determining the snow and ice immunity applies and precludes their claims. They contend there is an exception to the immunity if the snow or ice condition is caused by an affirmative negligent act of a State employee and there are genuine issues of material fact about whether the State was negligent in creating the snowbank adjacent to the guardrail and also in failing to remove the snowbank. The Schroeders claim the evidence was undisputed that the State's actions created the snowbank, and there was evidence from which reasonable inferences could be made that the State could have removed the snowbank as it initially plowed the road, that the snowbank was not hard, and that the State had the ability to easily remove the snowbank.

[¶17] Section 32-12.2-02(3)(i), N.D.C.C., contains the snow and ice immunity and states the State may not be held liable for "[a] claim resulting from snow or ice conditions . . . on a highway . . . except when the condition is affirmatively caused by the negligent act of a state employee." The statute provides that the State is immune from liability for claims resulting from snow or ice conditions on a highway. The plain language of the statute also provides an exception to the immunity, allowing a claim resulting from a snow or ice condition that was affirmatively caused by a state employee's negligent act. Our interpretation of N.D.C.C. § 32-12.2-02(3)(i) is consistent with the interpretation of similar statutes in other states. *See, e.g., Porter v. Grant Cty. Bd. of Educ.*, 633 S.E.2d 38, 42 (W.Va. 2006); *Koen v. Tschida*, 493 N.W. 2d 126, 128 (Minn. Ct. App. 1992). Chapter 32-12.2, N.D.C.C., does not specifically define negligent act. However, N.D.C.C. § 1-01-17 provides a general definition for different degrees of negligence and states ordinary negligence is "the want of ordinary care and diligence."

[¶18] The record includes evidence about the Department's policies at the time of the accident related to plowing and snow removal. Undisputed evidence established Department policy is for the plow operators to prioritize and focus

7

first on clearing the lanes, shoulders, and ramps; after that is complete, then plow operators clean any remaining areas, including remaining compacted snow and ice on the roadway, ramps, stop sign areas, shoulders, and guardrails; and complex cleanup operations requiring more resources are scheduled as time and resources permit. Evidence established that cleaning guardrails with a roadway underneath can be a complex operation because the snow should not be pushed onto the roadway below. The Department's 2016-2017 Snow and Ice Control Manual states, "Snow should not be plowed over the side of a bridge deck that has a roadway under the bridge. In this case, snow should be pushed to the ends of the structure and then thrown down the approach embankment." Undisputed evidence established that cleaning a guardrail with a roadway underneath requires additional resources, including extra crew to reduce the roadway to a single lane or close it completely, and may require special equipment and crew members trained to operate the equipment.

[¶19] Viewing the evidence in the light most favorable to the Schroeders, evidence exists that the snowbank was created at least in part through the Department's plowing activities. The record contains deposition testimony from Keith Nelson, the Department's district supervisor to the plow crew responsible for the area of the interstate where the accident occurred. He testified about the weather conditions prior to the accident, the Department's plowing operation, and how the snowbank was formed along the guardrail. Nelson testified there was a freezing rain and ice event on December 25 and 26, which was about two weeks before the accident; it rained first and then snowed and there were high, straight-line winds; a slush was created on the road, and the Department employees continued plowing the road to keep the main roadway clear; the snow was plowed into the guardrail as it fell, mixing with the slush, and the mixture hardened and formed ice once temperatures cooled. He also testified there were significant snow events between January 1 and 3, with about ten inches of snow on January 1 and an additional ten inches of snow between January 2 and 3. He testified there were smaller amounts of snow that fell each day on January 4, 5, and 6. He further testified that there were colder temperatures and strong winds during this period, including straight-line winds, which caused drifting and filling in of the lighter snow.

8

[¶20] Nelson testified the snowbank consisted mostly of ice and was created through the Department's process of sanding and using brine on the roadway during weather events prior to the accident. He testified that with the series of snow events before the accident, at some point the plow operators could not keep up and the snowbank became compacted. Nelson testified Department employees were unable to remove the snowbank once it was created because it was made mostly out of ice, the ice was pushed in between the wood posts and the metal guardrail, and the guardrail would have been damaged or destroyed by removing the ice. Nelson testified the snowbank adjacent to the guardrail was hard, it could not be moved, and his plow operators told him they did not dare plow it any further because their plows were starting to catch on the snowbank. He testified that when a snowplow catches on a snowbank it can break the plow's wing, it can turn the plow sideways and send it through the guardrail, and it can destroy the guardrail.

[¶21] Nelson testified they did not use a bulldozer to clear the snowbank because they do not use a bulldozer on the road, they would have had to close the adjacent lane of the interstate and go backwards against the flow of traffic, and he did not believe it could be done without damaging the guardrail. There was also testimony from Matthew Maresh, one of the plow operators, that a Bobcat or a payloader could have cleared the snow and ice along the guardrail, but payloaders are not used to clean ice along a guardrail because they would have to go against the flow of traffic along the road with a shadow truck behind, and with the levels of traffic on the interstate it is not safe; a bucket or a plow going against the guardrail backwards can catch a ledge on the guardrail and tear the guardrail or bend it or break or bend the bolts. He also testified that the incline in the pavement makes the payloader slide into the guardrail, which can damage the payloader and the guardrail, which weakens the integrity of the guardrail. He testified that a Bobcat or payloader was not used to clean out the hard snow along the guardrail because it was not safe with the level of traffic on that area of the interstate. He also testified that he has never closed a lane of traffic on the interstate to remove snow, that it takes four or five people to set up and complete a lane closure to remove snow from a section of the interstate, and that it takes them about a half a day.

9

[¶22] Considering the evidence in the light most favorable to the Schroeders, the snow or ice condition along the guardrail was not naturally occurring. Evidence exists that the snow or ice condition was affirmatively caused by the State's actions plowing the road. However, the evidence and reasonable inferences from the evidence do not show that the State employees' actions were negligent. There was no evidence or allegation that the Department employees did not comply with the Department's snow removal policies. The snow and ice immunity protects the State from liability from claims resulting from conditions caused by the natural result or effect of snowplowing when the plowing is done pursuant to Department policies. *See In re Alexandria Accident of Feb. 8, 1994*, 561 N.W.2d 543, 549 (Minn. Ct. App. 1997).

[¶23] Furthermore, the negligent act must affirmatively cause the condition. The failure to act—in this case the Schroeders contend the failure to remove the snowbank was the negligent act—is not an affirmative act. An affirmative act is one "[i]nvolving or requiring effort." *Black's Law Dictionary*, 73 (11th ed. 2019). The failure to remove the snowbank was not an affirmative act that caused the condition.

[¶24] Minnesota has a similar snow and ice immunity statute, which provides the State is not liable for "a loss caused by snow or ice conditions on a highway . . . except when the condition is affirmatively caused by the negligent acts of a state employee[.]" Minn. Stat. § 3.736(3)(d). Minnesota courts have held that "statutory snow and ice immunity protects government entities from liability for damages caused by the natural consequences of snow plowing when the plowing was done pursuant to established snow-removal policies and the claimants have shown no willful acts or malfeasance." *Alexandria Accident*, 561 N.W.2d at 549. Minnesota courts interpreting and applying the snow and ice immunity in cases with facts similar to those in this case have held the State was immune from liability.

[¶25] In *Norlander v. Norman's Bar*, 1999 WL 118628 (Minn. Ct. App. 1999), the court considered whether the Minnesota statutory ice and snow immunity applied in facts very similar to those in this case. In *Norlander*, the driver of a vehicle died after the vehicle jumped a bridge rail on an interstate exit ramp.

10

*Id.* at 1. The bridge rail was partially covered by a snowbank formed by snowplow operators. *Id.* at 2. The court noted state procedures call for the removal of snow and ice from the roadways in accordance with a policy of prioritization, traveled portions of the road have highest priority, and clearing snow from barriers along bridges and ramps is a secondary priority. *Id.* The court stated there was a substantial snowstorm in the week prior to the accident and the highest priority snow removal was performed, snow removal was suspended for a period in accordance with state policy because the air temperature became too cold, overtime work was limited to only the highest-priority snow removal, and clearing snow from along bridge rails was a complex process involving closing the roadway, scheduling several workers, and using specialized equipment. *Id.* The court said the claimant had to show an affirmative act of negligence, the state employees moved the snow pursuant to established policies, and there was no evidence the snowbank was caused by affirmative negligent acts of state employees plowing the roadway. *Id.* at 3. The court concluded the state had snow and ice immunity from liability for the accident and the district court did not err in granting summary judgment. *Id.* at 3-4.

[¶26] In *Hennes v. Patterson*, 443 N.W.2d 198 (Minn. Ct. App. 1989), the court also held ice and snow immunity applied and precluded liability. On December 20, 1983, a passenger in a car was killed and others were injured when the driver lost control of the car on a bridge and the car "rocketed" up a pile of snow packed against the guardrail and went over the side of the bridge. *Id.* at 200. The court held the State was immune from liability. *Id.* at 204. The court said there was no evidence the snowbank along the guardrail was created by a negligent act of plowing the road, the plowing was done pursuant to state policy, and therefore the State was immune from liability under the snow and ice immunity for plowing the snow off the road and against the guardrail. *Id.* at 203. The court also considered whether the State was negligent in failing to remove the snowbank, and the court concluded the State was immune under discretionary function immunity because the decision not to remove the snowbank was made pursuant to state policies based on the considerations of the public's safety, limited equipment and workers, budget, and safety concerns for workers. *Id.* The court held "the decision not to remove the

snowbank along the bridge guardrail on the weekend was done pursuant to a policy which balanced several factors, and is therefore the type of decision which is immune from liability under the discretion function exception." *Id.* at 204.

[¶27] Looking at the evidence in the light most favorable to the Schroeders, the evidence does not raise a genuine issue of material fact that the snow or ice condition was affirmatively caused by a State employee's negligent act. The snow and ice immunity applies and precludes the Schroeders' claim. We conclude the district court did not err in granting summary judgment.

### III

[¶28] We affirm the judgment.

[¶29] Jerod E. Tufte
Lisa Fair McEvers
Gerald W. VandeWalle
Daniel J. Crothers
Jon J. Jensen, C.J.