2017 ND 206

**Aarin John NYGAARD, Plaintiff and Appellee**

v.

**Tricia Bernice TAYLOR, Defendant and Appellant**

**Terrance L. Stanley, Plaintiff and Appellee**

v.

**Tricia Bernice Taylor, Defendant and Appellant**

No. 20170016, No. 20170017

Supreme Court of North Dakota.

Filed 8/29/2017

Tracy J. Lyson (argued), Fargo, N.D., for plaintiffs and appellees.

Stormy R. Vickers (argued), Fargo, N.D., for defendant and appellant.

McEvers, Justice.

[¶ 1] Tricia Taylor appeals from orders denying her motions to quash contempt and for immediate release from incarceration. We exercise our supervisory jurisdiction and conclude the judicial referee erred in denying Taylor's motions for immediate release from incarceration. We reverse.

I

[¶ 2] These consolidated cases involve custody disputes between the mother, Tricia Taylor, and Aarin Nygaard and Terrance Stanley, the two fathers of her minor children. Stanley and Taylor were married in 2009 and divorced in 2011. They are the parents of a child born in 2007. Nygaard and Taylor were never married but had a child together who was born in 2013. All of the parties resided in Fargo. Nygaard and Stanley were eventually awarded primary residential responsibility for their respective children, and Taylor was granted supervised visitation. In September 2014, Taylor fled with both of the minor children to the Cheyenne River Indian Reservation in South Dakota, and Nygaard and Stanley have not had any contact with the children since then.

[¶ 3] Taylor was found in contempt for violating multiple district court orders for refusing to return the minor children to their fathers. In addition, Taylor was arrested and pled guilty to class C felony parental kidnapping and has been incarcerated in North Dakota since November 2014. In January 2015, the Cheyenne River Sioux Tribal Court entered a temporary order awarding custody of the children to Taylor's sister on the reservation. Shortly before Taylor was scheduled to be released on parole in November 2015 on the parental kidnapping conviction, the district court issued interlocutory orders in both custody cases finding her in contempt for refusing to return the children to their fathers and issued warrants for her arrest. Immediately upon her release from incarceration on the parental kidnapping conviction, Taylor was served with the arrest warrants and remained in custody for contempt.

[¶ 4] At a December 2015 hearing on the interlocutory orders, Taylor argued she did not have the ability to return the minor children to their fathers. A judicial referee rejected the argument in January 2016 and found Taylor was "voluntarily electing to continue to withhold" the minor children from their fathers. Taylor requested the judicial referee to review the contempt

findings, and in March 2016 the referee confirmed her prior rulings and ordered that Taylor "shall remain in custody until such time as she returns the minor child[ren] to" their fathers. Taylor requested the district court to review the referee's orders, and in April 2016 the court adopted and affirmed the referee's orders. Taylor did not appeal. Taylor has not returned the children to their fathers and has remained incarcerated.

[¶ 5] In October 2016, Taylor filed motions to quash the contempt orders and for immediate release from imprisonment, claiming she had been incarcerated for contempt longer than the six months authorized under N.D.C.C. § 27–10–01.4(1)(b). On December 7, 2016, the judicial referee issued identical orders in the two cases stating:

> The Court, having considered the pleadings filed by the parties, having considered the statements and arguments of counsel, and being otherwise familiar with the entirety of this matter does find that the evidence suggests that Ms. Taylor continues to remain in contempt of court as it is undisputed that the minor child has not yet been returned to the Plaintiff. However, this matter shall be scheduled for an Order to Show Cause hearing on December 8, 2016 at 1:00 p.m. to allow the parties to present further evidence as to that issue.
>
> Defendant's request for immediate release from incarceration is DENIED. The Court further finds that Defendant shall remain incarcerated pending the hearing on December 8, 2016 as she poses a significant flight risk and a risk to the child's wellbeing.

[¶ 6] On December 8, 2016, the date for the hearing was rescheduled to December 14, 2016, but on that day the parties stipulated to continue the hearing because Taylor's attorney was ill. The hearing was rescheduled for January 13, 2017, but on that day Taylor appealed the December 7, 2016 orders and no hearing was held.

## II

[¶ 7] Nygaard and Stanley argue that Taylor's appeals should be dismissed because the orders are not appealable under N.D.C.C. §§ 27–10–01.3(3) or 28–27–02.

[¶ 8] The right to appeal is purely statutory, and if there is no statutory basis for appeal we must take notice of the lack of jurisdiction and dismiss the appeal. *See, e.g.*, *Holbach v. City of Minot*, 2012 ND 117, ¶ 5, 817 N.W.2d 340. Although an appeal may be taken from "any order or judgment finding a person guilty of contempt" under N.D.C.C. § 27–10–01.3(3), these orders did not determine Taylor was guilty of contempt. The orders scheduled an evidentiary hearing to decide whether Taylor remained in contempt or whether she should be released from incarceration.

[¶ 9] Taylor contends the orders are appealable under N.D.C.C. § 28–27–02. We have described our two-step analysis for evaluating appealability as follows:

> " 'First, the order appealed from must meet one of the statutory criteria of appealability set forth in NDCC § 28–27–02. If it does not, our inquiry need go no further and the appeal must be dismissed. If it does, then Rule 54(b), N.D.R.Civ.P., [if applicable,] must be complied with. If it is not, we are without jurisdiction.' "

*Holverson v. Lundberg*, 2015 ND 225, ¶ 9, 869 N.W.2d 146 (quoting *In re Estate of Hollingsworth*, 2012 ND 16, ¶ 9, 809 N.W.2d 328).

[¶ 10] Taylor relies on N.D.C.C. § 28–27–02(2) which authorizes appeals from a "final order affecting a substantial right made in special proceedings or upon

a summary application in an action after judgment." We have held that this provision authorizes an appeal from an order dismissing or quashing an order to show cause why a party should not be held in contempt. *See Glasser v. Glasser*, 2006 ND 238, ¶ 9, 724 N.W.2d 144; *Johnson v. Johnson*, 527 N.W.2d 663, 666 (N.D. 1995). The first part of the judicial referee's orders does not dismiss Taylor's motions to quash contempt but schedules an evidentiary hearing to decide the issue. This part of the decision is not "final" because it contemplates further proceedings and does not resolve the issue. *See Ziegler v. Meadowbrook Ins. Grp., Inc.*, 2009 ND 192, ¶ 14, 774 N.W.2d 782. Although the second part of the referee's order states the requests for immediate release from incarceration are "DENIED," the referee orders Taylor to remain incarcerated "pending the hearing." We have said this Court "will not consider interlocutory appeals unless it can be affirmatively established that the underlying order was 'meant to be, in all aspects, final.'" *N.D. State Elec. Bd. v. Boren*, 2008 ND 182, ¶ 4, 756 N.W.2d 784 (citation omitted). The referee did not intend that its December 7, 2016 orders were final orders.

[¶ 11] Nevertheless, in *State ex rel. Harris v. Lee*, 2010 ND 88, ¶ 6, 782 N.W.2d 626, we explained:

Under N.D. Const. art. VI, § 2, and N.D.C.C. § 27–02–04, this Court may examine a district court decision by invoking our supervisory authority. *Mann v. N.D. Tax Comm'r*, 2005 ND 36, ¶ 20, 692 N.W.2d 490. We exercise our authority to issue supervisory writs rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases when no adequate alternative remedy exists. *E.g., Forum Commc'ns Co. v. Paulson*, 2008 ND 140, ¶ 8, 752 N.W.2d 177; *Trinity Hosps. v. Mattson*, 2006 ND 231, ¶ 6, 723 N.W.2d 684. Our au-

thority to issue a supervisory writ is "'purely discretionary,'" *State v. Paulson*, 2001 ND 82, ¶ 6, 625 N.W.2d 528 (quoting *Patten v. Green*, 369 N.W.2d 105, 106 (N.D. 1985)), and we determine whether to exercise supervisory jurisdiction on a case-by-case basis, considering the unique circumstances of each case. *See Forum Commc'ns,* at ¶ 8; *State v. Holte*, 2001 ND 133, ¶ 5, 631 N.W.2d 595; *Central Power Elec. Coop., Inc. v. C–K, Inc.*, 512 N.W.2d 711, 715 (N.D. 1994). Exercise of supervisory jurisdiction may be warranted when issues of vital concern regarding matters of important public interest are presented. *See Forum Commc'ns,* at ¶ 9; *Trinity Hosps.,* at ¶ 7; *Mitchell v. Sanborn*, 536 N.W.2d 678, 683 (N.D. 1995).

[¶ 12] Taylor has been incarcerated solely for contempt for well over 400 straight days. The issue raised in this case is a question of first impression in this jurisdiction and involves a district court's authority to incarcerate persons found to be in contempt of court indefinitely. We believe this is an issue of vital concern regarding matters of important public interest, and we exercise our discretion to review the issue raised in this case.

### III

[¶ 13] The parties agree that the applicable contempt statute is N.D.C.C. § 27–10–01.1(1)(c), which defines "[c]ontempt of court" as the "[i]ntentional disobedience, resistance, or obstruction of the authority, process, or order of a court or other officer, including a referee or magistrate." A "[r]emedial sanction" includes "a sanction that is conditioned upon performance or nonperformance of an act required by court order." N.D.C.C. § 27–10–01.1(4). Remedial sanctions for contempt of court are set forth in N.D.C.C. § 27–10–01.4(1), which provides:

A court may impose one or more of the following remedial sanctions:

a. Payment of a sum of money sufficient to compensate a party or complainant, other than the court, for a loss or injury suffered as a result of the contempt, including an amount to reimburse the party for costs and expenses incurred as a result of the contempt;

b. Imprisonment if the contempt of court is of a type included in subdivision b, c, d, e, or f of subsection 1 of section 27–10–01.1. The imprisonment may extend for as long as the contemnor continues the contempt or six months, whichever is shorter;

c. A forfeiture not to exceed two thousand dollars for each day the contempt continues;

d. An order designed to ensure compliance with a previous order of the court; or

e. A sanction other than the sanctions specified in subdivisions a through d if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt.

[¶ 14] Taylor argues N.D.C.C. § 27–10–01.4(1)(b) applies in this case because she was ordered to be incarcerated, and because her continuous incarceration has exceeded six months, she is entitled to be released from imprisonment. Although Nygaard and Stanley argue the district court's April 2016 order affirming the judicial referee's decision qualified as an "order designed to ensure compliance with a previous order of the court" under N.D.C.C. § 27–10–01.4(1)(d), this argument ignores that the court ordered Taylor to be imprisoned until she returns the children to their fathers. The contempt orders fall within the imprisonment remedial sanction under N.D.C.C. § 27–10–01.4(1)(b). The issue in this case is whether Taylor is entitled to be released from confinement because she has served more than the six consecutive months in prison allowed under N.D.C.C. § 27–10–01.4(1)(b).

[¶ 15] North Dakota's contempt statutes were "heavily influenced by Wisconsin's contempt system," and we have relied on Wisconsin authority when interpreting our contempt statutes. *Peters–Riemers v. Riemers*, 2003 ND 96, ¶ 23, 663 N.W.2d 657. Section 27–10–01.4(1), N.D.C.C., is substantively identical to Wis. Stat. Ann. § 785.04(1) (West 2001). The comments to the Wisconsin statute provide:

The sanctions listed in this section are essentially the same as under prior law. Sub. (1)(d) is added to make it clear that a separate order may be necessary to enforce a prior order. Sub. (1)(e) incorporates the principle set forth in *Kenosha Unified School Dist. No. 1 v. Kenosha Ed. Assn.*, 70 Wis.2d 325, 234 N.W.2d 311 (1975).

Comments, *id.* at 450.

[¶ 16] In *Kenosha*, 234 N.W.2d at 315, a Wisconsin contempt statute allowing a fine for indemnifying loss provided: "Where no such actual loss or injury has been produced the fine shall not exceed two hundred and fifty dollars over and above the costs and expenses of the proceedings." The defendant association was found in contempt and the trial court imposed a fine of $7,500 per day. *Id.* at 313. The defendant association appealed, claiming the trial court erred because the fine assessed exceeded the statutory maximum. *Id.* In addressing the issue, the Wisconsin Supreme Court explained:

In a recent Washington case, individual teachers and an education association were held in contempt for violating a temporary injunction prohibiting a teachers' strike. A fine was imposed on

the association of $1,000. The teachers argued on appeal that this fine was in excess of the $100 penalty authorized for civil contempts by a Washington statute. In *Mead School District No. 354 v. Mead Education Ass'n* (1975), 85 Wash.2d 278, 534 P.2d 561, the Washington Supreme Court held that the court has inherent power to punish for contempt and held that while the legislature may regulate that power, it may not diminish it so as to render it ineffectual. However, the court ruled that the $1,000 fine could not stand because the trial court had made no finding that the statutory $100 penalty would impair its contempt power in that case. The fine against the association was modified by the court to fit within the $100 maximum set by the statute.

In this case there is no specific finding by the trial court that its power would be rendered ineffectual by the limitation set by sec. 295.14, Stats. Such a finding is necessary if the fine imposed is to exceed these limitations.

We conclude, therefore, that the maximum fine that could have been imposed upon the Kenosha Education Association was $250 plus reasonable costs and expenses of the proceedings. The record must be remanded for an imposition of a fine not to exceed $250. In addition thereto, the school district shall be given an opportunity to establish its reasonable and necessary costs and expenses of the proceedings.

*Id.* at 316.

[¶ 17] Courts have the inherent power to confine a contemnor indefinitely until he complies with an affirmative command that he has the ability to perform, because "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.' " *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). *See also Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); Dan B. Dobbs, *Law of Remedies* § 2.8(2) (2d ed. 1993). Although this Court has recognized courts' inherent contempt powers, we have also recognized that those powers may be limited by the legislature. *See, e.g., Blomdahl v. Blomdahl*, 2011 ND 78, ¶ 9, 796 N.W.2d 649; *Investors Title Ins. Co. v. Herzig*, 2010 ND 138, ¶ 41, 785 N.W.2d 863; *Millang v. Hahn*, 1998 ND 152, ¶ 10, 582 N.W.2d 665. The contempt power is inherent in the judicial power vested by our constitution in the judicial branch. N.D. Const. art. VI, § 1. The legislature may enact laws to "carry into effect the provisions of th[e] constitution," N.D. Const. art. IV, § 13, but the contempt power "cannot be entirely taken away, nor can its efficiency be so impaired or abridged as to leave the court without power to compel the due respect and obedience which is essential to preserve its character as a judicial tribunal." *Murphy v. Townley*, 67 N.D. 560, 567, 274 N.W. 857, 860–61 (1937) (quoting *State ex rel. Ashbaugh v. Circuit Court*, 97 Wis. 1, 72 N.W. 193, 194 (1897)). Section 27–10–01.4(1)(b), N.D.C.C., limits imprisonment as a remedial sanction for continuing contempts to "extend for as long as the contemnor continues the contempt or six months, whichever is shorter.". Nygaard and Stanley argue that imprisonment may be extended beyond six months if the sanction is "designed to ensure compliance with a previous order of the court." N.D.C.C. § 27–10–01.4(1)(d). Section 27–10–01.4(1)(e), N.D.C.C., further provides that a court may impose "[a] sanction other than the sanctions specified in subdivi-

sions a through d if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt."

[¶ 18] Nygaard's and Stanley's reliance on subdivision (d) is unavailing to extend the six-month limitation on imprisonment. As a remedial sanction, the sanction is by definition conditioned on performance of an act required by a court order (turning over the children to their fathers). Because it is conditional, every remedial sanction of imprisonment is "designed to ensure compliance with a previous order." To read subdivision (d) as allowing imprisonment beyond six months would render the specific limitations in subdivision (b) superfluous.

[¶ 19] Subdivision (e) also does not permit imprisonment beyond six months on this record. The judicial referee's January 2016 orders, the referee's March 2016 orders to review contempt, and the district court's April 2016 orders on request for review do not contain an express finding that imprisonment for six months under N.D.C.C. § 27–10–01.4(1)(b) would be ineffectual to terminate Taylor's continuing contempt. The legislature has determined through its enactment of N.D.C.C. § 27–10–01.4(1)(b) that a remedial sanction of "imprisonment may extend for as long as the contemnor continues the contempt or six months, whichever is shorter." The legislature has also taken into account that courts may exercise inherent authority in excess of the six-month limitation for imprisonment "if the court expressly finds that [the six-month limitation] would be ineffectual to terminate a continuing con-

tempt." N.D.C.C. § 27–10–01.4(1)(e) (emphasis added).

[¶ 20] In this case, the judicial referee's January 2016 orders, the referee's March 2016 orders to review contempt, and the district court's April 2016 orders on request for review do not contain an express finding that imprisonment for six months under N.D.C.C. § 27–10–01.4(1)(b) would be ineffectual to terminate Taylor's continuing contempt. Without that finding, Taylor could not be imprisoned for more than six months under the court's most recent orders finding her in contempt.

[¶ 21] We conclude the judicial referee erred in denying Taylor's motions for immediate release from incarceration.

## IV

[¶ 22] The orders are reversed.

[¶ 23] Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

[¶ 24] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.