# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 183

William S. Wilkinson; Ann L. Nevins and
Amy L. Perkins as Personal Representatives for the
Estate of Dorothy A. Wilkinson; Barbara Caryl Materne,
Trustee of the Petty Living Trust;
Charlie R. Blaine and Vanessa E. Blaine, as
Co-Trustees of the Charlie R. Blaine and
Vanessa E. Blaine Revocable Trust; Lois Jean Patch,
life tenant; and Lana J. Sundahl, Linda Joy Weigel,
Deborah J. Goetz, Marva J. Will, Ronald J. Patch,
Michael Larry Patch, and Jon Charles Patch,

Remaindermen,                                  Plaintiffs and Appellees

     v.

The Board of University and School Lands of the
State of North Dakota, Brigham Oil & Gas, LLP;

StatoilOil & Gas LP;                        Defendants and Appellants

    and

EOG Resources, Inc.;                          Defendant and Appellee

    and

XTO Energy Inc.; Petrogulf Corporation, and all other
persons unknown who have or claim an interest in

the property described in the Complaint,                    Defendants

    and

North Dakota State Engineer,              Intervener and Appellant

No. 20190354

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Paul W. Jacobson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Joshua A. Swanson (argued) and Robert B. Stock (appeared), Fargo, ND, for plaintiffs and appellees.

David P. Garner, Bismarck, ND, for defendant and appellant the Board of University and School Lands of the State of North Dakota.

John E. Ward, Bismarck, ND, for defendant and appellant Brigham Oil & Gas, LLP and Statoil Oil & Gas, LP.

Lawrence Bender, Bismarck, ND, for defendant and appellee EOG Resources, Inc.

Jennifer L. Verleger, Bismarck, ND, for intervener and appellant North Dakota State Engineer.

Craig C. Smith and Paul J. Forster, Bismarck, ND, amicus curiae North Dakota Petroleum Council.

**Wilkinson, et al. v. Board of University and School Lands of the State of N.D.**
**No. 20190354**

**Crothers, Justice.**

[¶1]   The Board of University and School Lands of the State of North Dakota, the State Engineer, and Statoil Oil & Gas LP appeal from a judgment determining William Wilkinson and the other plaintiffs own mineral interests in certain land. Although the judgment is not appealable because it did not dispose of all claims against all parties, we exercise our supervisory jurisdiction to review the summary judgment. We conclude the district court did not err in concluding N.D.C.C. ch. 61-33.1 applies and the disputed mineral interests are above the ordinary high water mark of the historical Missouri riverbed channel, but the court erred in quieting title and failing to comply with the statutory process. We affirm in part, reverse in part, and remand.

I

[¶2]   J.T. Wilkinson and Evelyn M. Wilkinson acquired title to property located in Williams County described as:

> Township 153 North, Range 102 West
> Section 12: SW1/4
> Section 12: S1/2NW1/4, excepting that portion which constitutes the right-of-way of the BNSF Railway Company
> Section 13: Farm Unit No. 312 in the Buford-Trenton Project

In 1958, the Wilkinsons conveyed the property to the United States for construction and operation of the Garrison Dam and Reservoir, but they reserved the oil, gas, and other minerals in and under the property. The plaintiffs are the Wilkinsons' successors in interest.

[¶3]   In 2012, the plaintiffs sued the Land Board to determine ownership of the minerals in and under the property, alleging they own the mineral interests. The plaintiffs also sued Brigham Oil & Gas, LLP and EOG Resources, Inc., to determine their rights, alleging Brigham received an oil and

gas lease from the State and EOG received an oil and gas lease from the plaintiffs. In an amended complaint the plaintiffs sought damages for claims of unconstitutional takings under the state and federal constitutions by the state defendants, and conversion and civil conspiracy by all defendants. The plaintiffs also sought to impose a constructive trust on monies received by others, and for injunctive relief. After answers by the defendants and extensive counterclaims and crossclaims among the parties, the district court determined ownership of the property below the ordinary high water mark ("OHWM") in favor of the Land Board.

[¶4]   This Court reviewed the district court's summary judgment determining the State owned the minerals below the OHWM of the Missouri River as part of its sovereign lands. *See Wilkinson v. Bd. of Univ. and Sch. Lands*, 2017 ND 231, 903 N.W.2d 51. The facts underlying this dispute were stated in the prior appeal and we will not repeat them here except as necessary to resolve the issues raised in the present appeal. *Id.* at ¶¶ 2-9.

[¶5]   In the prior appeal we reversed the judgment. *Wilkinson*, 2017 ND 231, ¶ 29, 903 N.W.2d 51. We remanded for the district court to determine whether N.D.C.C. ch. 61-33.1, governing State ownership of the Missouri riverbed, applies and governs ownership of the minerals at issue in this case. *Id.* at ¶ 20. We also directed the court to reconsider the plaintiffs' takings claim if the court decided the State owns the minerals. *Id.* at ¶ 25.

[¶6]   On remand the plaintiffs moved for summary judgment. The plaintiffs argued N.D.C.C. ch. 61-33.1 applies, the Industrial Commission determined under N.D.C.C. ch. 61-33.1 that the Wilkinson property is above the OHWM of the historical Missouri riverbed channel, that the State is bound by its admission in a separate action that N.D.C.C. ch. 61-33.1 applies, and that the State does not own the minerals. The plaintiffs also argued any outcome in which they are deprived of the property is an unconstitutional taking under the United States and North Dakota constitutions requiring just compensation. The plaintiffs requested the district court enter summary

2

judgment in their favor and hold that they own the disputed minerals as a matter of law.

[¶7]   Statoil, the Land Board, and the State Engineer opposed the plaintiffs' motion. EOG opposed the State's claim to the Wilkinson property but did not take a position on whether the summary judgment motion should be granted.

[¶8]   XTO Energy, Inc., filed a stipulated motion to be dismissed from the action. XTO admitted it does not hold an ownership interest in or a claim to any of the disputed mineral interests. The district court granted the motion and dismissed XTO from the action.

[¶9]   After a hearing, the district court granted the plaintiffs' motion, determining N.D.C.C. ch. 61-33.1 applies and the plaintiffs own the disputed minerals. The court concluded the State's interest is statutorily limited to the historical Missouri riverbed channel as determined by N.D.C.C. ch. 61-33.1, the Industrial Commission determined under N.D.C.C. § 61-33.1-03 that the Wilkinson property is above the OHWM of the historical Missouri riverbed channel, and therefore the State's claim to the property failed as a matter of law. The court held it did not need to go any further than deciding the first issue remanded, N.D.C.C. ch. 61-33.1 applies and controls the ownership, the Wilkinson property is above the OHWM of the historic Missouri riverbed channel, and therefore the plaintiffs own the property. The court further stated, "That concludes the statutory process as applied to the Wilkinsons and their claims in the Amended Complaint." The district court entered judgment quieting title to the mineral interests in the plaintiffs.

II

[¶10] Statoil argues the district court erred in entering judgment because the remaining causes of action were not dismissed and N.D.R.Civ.P. 54(b) was not complied with.

[¶11] The right to appeal is statutory and if no statutory basis for appeal exists, we must take notice of the lack of jurisdiction and dismiss the appeal.

3

*Nygaard v. Taylor*, 2017 ND 206, ¶ 8, 900 N.W.2d 833. We have a two-step process for evaluating appealability:

> "First, the order appealed from must meet one of the statutory criteria of appealability set forth in NDCC § 28-27-02. If it does not, our inquiry need go no further and the appeal must be dismissed. If it does, then [N.D.R.Civ.P. 54(b)], [if applicable,] must be complied with. If it is not, we are without jurisdiction."

*Nygaard*, at ¶ 9 (quoting *Holverson v. Lundberg*, 2015 ND 225, ¶ 9, 869 N.W.2d 146).

[¶12] "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." N.D.R.Civ.P. 54(b). "We will not consider an appeal in a multi-claim or multi-party case which disposes of fewer than all claims against all parties unless the trial court has first independently assessed the case and determined that a Rule 54(b) certification is appropriate." *Greer v. Global Indus., Inc.*, 2018 ND 206, ¶ 10, 917 N.W.2d 1 (quoting *Baker v. Autos, Inc.*, 2017 ND 229, ¶ 6, 902 N.W.2d 508).

[¶13] The Land Board, State Engineer, and Statoil appealed from the judgment entered after the district court granted summary judgment and quieted title to the property in the plaintiffs' favor. Generally, an order granting summary judgment and the subsequently entered judgment are appealable. *Greer*, 2018 ND 206, ¶ 9, 917 N.W.2d 1.

[¶14] The plaintiffs' amended complaint alleged multiple claims for relief. They requested declaratory relief and sought damages for unconstitutional taking of property under the state and federal constitutions, conversion, unjust enrichment, and civil conspiracy. Their complaint was dismissed with prejudice before the prior appeal. The decision in the prior appeal did not specifically address any claims other than the plaintiffs' request for declaratory judgment deciding ownership of the disputed minerals and the takings claim.

4

*See Wilkinson*, 2017 ND 231, 903 N.W.2d 51. The Court reversed the prior judgment without affirming any part of the judgment. *Id.* at ¶ 29.

[¶15] On remand the district court granted summary judgment in favor of the plaintiffs, but only explicitly addressed the declaratory judgment claim by determining the plaintiffs own the Wilkinson property. The district court stated no other issues needed to be addressed. The court did not dismiss the other claims, including the takings claims which were explicitly reversed in the prior appeal.

[¶16] Under the status of this case, the question of plaintiffs' damages remains unresolved. Even if we were to fully affirm the district court's decision and conclude the court correctly applied N.D.C.C. ch. 61-33.1 and did not err in quieting title, plaintiffs claim recovery of damages by taking or otherwise for when the State claimed ownership of the property. Deciding ownership of the mineral interests does not resolve all of the claims, and we therefore do not have a final judgment disposing of all claims against all parties. Moreover, none of the parties requested certification under N.D.R.Civ.P. 54(b) or requested the court amend its judgment to dismiss the remaining claims. The case does not comply with N.D.R.Civ.P. 54(b).

[¶17] Although this appeal is not authorized, we may exercise supervisory jurisdiction to review the judgment.

> "Under N.D. Const. art. VI, § 2, and N.D.C.C. § 27-02-04, this Court may examine a district court decision by invoking our supervisory authority. We exercise our authority to issue supervisory writs rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases when no adequate alternative remedy exists. Our authority to issue a supervisory writ is 'purely discretionary,' and we determine whether to exercise supervisory jurisdiction on a case-by-case basis, considering the unique circumstances of each case. Exercise of supervisory jurisdiction may be warranted when issues of vital concern regarding matters of important public interest are presented."

5

*Nygaard*, 2017 ND 206, ¶ 11, 900 N.W.2d 833 (quoting *State ex rel. Harris v. Lee*, 2010 ND 88, ¶ 6, 782 N.W.2d 626) (cleaned up).

[¶18] This case presents a significant issue regarding the interpretation and application of N.D.C.C. ch. 61-33.1, which is an issue of vital concern regarding matters of important public interest and of which there is little guidance in our case law. The important public interest is reflected in statements made during adoption and amendment of N.D.C.C. ch. 61-33.1.

[¶19] The legislature created a process to efficiently determine ownership of minerals in the defined geographic area and return any funds that were incorrectly paid to the State. During committee hearings about changing language in Ch. 61-33.1 from "inundated" to "subject to inundation," Representative Todd Porter testified, "If we don't set in code, as the policy makers in North Dakota, the definitions, then we're leaving it up to an agency to make those determinations. We've caught them twice, taking stuff that wasn't theirs. The other key component to this definition . . . is 'subject to inundation'. If you leave it as 'inundated,' you could have somebody's hay land that is flooded once every 30 years, the state of North Dakota would use that and come in and take that property." *Hearing on S.B. 2211 Before the Senate Energy and Nat. Res. Comm.,* 66th N.D. Legis. Sess. (April 22, 2019). There also was testimony from Representative Bob Martinson about the Wilkinson property stating, "In the case of the people who initiated the lawsuit, theirs is basically settled, it's a question of getting them paid subject to the Marvin Nelson lawsuit." *Hearing on S.B. 2211 Before the Senate Energy and Nat. Res. Comm.,* 66th N.D. Legis. Sess. (April 23, 2019). *See also, Hearing on S.B. 2211 Before the House Approps. Comm.*, 66th N.D. Legis. Sess. (March 19, 2019) (comments of Rep. Porter) (stating the 2019 amendments are necessary because they determined it was impossible for the land department to send out the money under the prior version of the statute, the process was not complete, acreage must be determined, and "We also want to pay back the money right away."); *Hearing on S.B. 2211 Before the Senate Energy and Nat. Res. Comm.,* 66th N.D. Legis. Sess. (April 22, 2019) (comments of Rep. George Keiser) (stating "For those individuals who went to court, and brought this case

forward; we assumed that they would be paid after the Wenck study. Now we are at another two years, another study, to make that determination. . . . We need to give them some compensation or give them their minerals, and apparently we can't, because the Wenck study did not provide adequate information to make that determination by the land department.").

[¶20] Because of the large number of affected landowners, the urgency with which the legislation was adopted, and the large sums of money at stake, this is an appropriate case to exercise our discretionary supervisory jurisdiction.

### III

[¶21] The issues here involve the interpretation and application of N.D.C.C. ch. 61-33.1. The State Engineer argues the district court misapplied the law and did not properly determine whether N.D.C.C. ch. 61-33.1 applies to the Wilkinson property. The Land Board and Statoil argue, for different reasons, that the district court's determination of ownership is premature under the procedural requirements of N.D.C.C. ch. 61-33.1. Our analysis of these arguments requires the review of N.D.C.C. ch. 61-33.1.

[¶22] "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *Wilkinson*, 2017 ND 231, ¶ 10, 903 N.W.2d 51 (quoting *THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 6, 892 N.W.2d 193). The movant has the burden of showing there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *Wilkinson*, at ¶ 10. In reviewing a district court's summary judgment decision, we view the evidence in the light most favorable to the party opposing the motion and give the party opposing the motion the benefit of all favorable inferences which can reasonably be drawn from the record. *Id.* We decide whether "the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law." *Id.* (quoting *THR Minerals*, at ¶ 6). Whether summary

7

judgment was proper is a question of law, which is reviewed de novo on appeal. *Wilkinson*, at ¶ 10.

[¶23] The district court granted the plaintiffs' motion for summary judgment, determining N.D.C.C. ch. 61-33.1 applies and the plaintiffs own the Wilkinson property. The court concluded:

> "The interpretation of Chpt. 61-33.1, N.D.C.C., is a question of law. As a matter of law, Chpt. 61-33.1, N.D.C.C., applies to the Wilkinsons' property, and the Industrial Commission's determination that the Wilkinsons' minerals are above the OHWM of the historical Missouri riverbed channel is conclusive.
> "Pursuant to the definitions established by the legislature in N.D.C.C. § 61-33.1-01, the Wilkinsons' property falls inside the area under the control of Chpt. 61-33.1, N.D.C.C., for determining the OHWM of the historical Missouri riverbed channel. As a matter of law, the State has no claim to any of the minerals, including the Wilkinsons', that the Industrial Commission determined are above the OHWM of the historical Missouri riverbed channel. . . . The Wilkinsons' property is in Township 153 North, Range 102 West, Section 12: SW/4, S/2NW/4, and Section 13: Farm Unit No. 312 in the Buford-Trenton Project. This is within the area the legislature included as part of the process for delineating the OHWM of the historical Missouri riverbed channel controlled by Chpt. 61-33.1, N.D.C.C.
> "Further, the Wilkinsons' property in Sections 12 and 13 is located between river mile 1554.0 and 1554.5. This also indisputably shows that the Wilkinsons' property is within the statutory area set by Chpt. 61-33.1, N.D.C.C., for determining the OHWM of the historical Missouri riverbed channel under North Dakota law. The area for determining the OHWM pursuant to Chpt. 61-33.1, N.D.C.C., continues further southwest of the Wilkinsons' property for approximately another 11 river miles to river mile 1,565 under the clear and unambiguous language in N.D.C.C. § 61-33.1-01.
> "As required by N.D.C.C. § 61-33.1-03, the Industrial Commission issued its Order that determined the OHWM of the historical Missouri riverbed channel, and set the limit on the State's interests. The Industrial Commission adopted the Wenck

8

Study after the public comment period required by law pursuant to N.D.C.C. § 61-33.1-03. The Wenck Study concluded the Wilkinsons' property was above the OHWM of the historical Missouri riverbed channel. The fact that the Wilkinsons' minerals are above the OHWM, and thus not owned by the State, is clearly visible in the Wenck Study maps adopted by the Industrial Commission in its Order.

. . . .

"The State's interest is statutorily-limited to the historical Missouri riverbed channel as determined by Chpt. 61-33.1, N.D.C.C. This cannot be disputed by the State. . . . The Industrial Commission determined that the Wilkinsons' property was above the OHWM of the historical Missouri riverbed channel. This is not a question of fact. It was established as a matter of law under Chpt. 61-33.1, N.D.C.C. The State is required to follow the Industrial Commission's Order. The State has no basis to continue claiming that it owns the Wilkinsons' property, and summary judgment in the Wilkinsons' favor is thus appropriate.

. . . .

"The Court does not need to go any further than deciding the first question remanded by the Supreme Court. As a matter of law, N.D.C.C. ch. 61-33.1 applies and controls the ownership of the property at issue. The Industrial Commission determined that the Wilkinsons' minerals are above the OHWM of the historic Missouri riverbed channel, and therefore, the Wilkinsons are entitled to those minerals. That concludes the statutory process as applied to the Wilkinsons and their claims in the Amended Complaint. The Wilkinsons are not required to pursue a separate lawsuit under N.D.C.C. § 61-33.1-05, as argued by Statoil Oil and Gas LP. The State is bound, as a matter of law, by the Industrial Commission's Order issued pursuant to Chpt. 61-33.1, N.D.C.C., and has no basis to continue claiming ownership of these minerals."

[¶24] The interpretation of a statute is a question of law, which is fully reviewable on appeal. *Rocky Mountain Steel Founds., Inc. v. Brockett Co., LLC*, 2018 ND 96, ¶ 5, 909 N.W.2d 671. Our primary objective in interpreting statutes is to determine the legislature's intent. *Baker*, 2019 ND 82, ¶ 10, 924 N.W.2d 441. When a statute is unambiguous, we look at the plain language of the statute to determine its meaning. *Schulke v. Panos*, 2020 ND 53, ¶ 8, 940

N.W.2d 303. A statute is ambiguous if it is susceptible to different, but rational, meanings. *PHI Fin. Servs., Inc. v. Johnston Law Office, P.C.,* 2020 ND 22, ¶ 10, 937 N.W.2d 885. We give words in a statute their plain, ordinary, and commonly understood meaning, unless specifically defined or a contrary intention plainly appears. N.D.C.C. § 1-02-02. "Statutes are construed together to give effect to each word and phrase, and all parts of a statute must be construed to have meaning." *Rocky Mountain*, at ¶ 5 (quoting *Schmidt v. City of Minot*, 2016 ND 175, ¶ 7, 883 N.W.2d 909); *see also* N.D.C.C. § 1-02-07. "When statutes relate to the same subject matter, this Court makes every effort to harmonize and give meaningful effect to each statute." *State v. Marcum*, 2020 ND 50, ¶ 21, 939 N.W.2d 840 (quoting *State v. Kuruc*, 2014 ND 95, ¶ 32, 846 N.W.2d 314).

[¶25] Section 61-33.1-02, N.D.C.C., states:

> "The state sovereign land mineral ownership of the riverbed segments subject to inundation by Pick-Sloan Missouri basin project dams extends only to the historical Missouri riverbed channel up to the ordinary high water mark. The state holds no claim or title to any minerals above the ordinary high water mark of the historical Missouri riverbed channel subject to inundation by Pick-Sloan Missouri basin project dams, except for original grant lands acquired by the state under federal law and any minerals acquired by the state through purchase, foreclosure, or other written conveyance."

Section 61-33.1-01(2), N.D.C.C., defines "historical Missouri riverbed channel" as:

> "[T]he Missouri riverbed channel as it existed upon the closure of the Pick-Sloan Missouri basin project dams, and extends from the Garrison Dam to the southern border of sections 33 and 34, township 153 North, range 102 West which is the approximate location of river mile marker 1,565, and from the South Dakota border to river mile marker 1,303."

[¶26] The plain language of N.D.C.C. § 61-33.1-02 indicates the State does not have any sovereign land ownership of any minerals above the ordinary high

water mark of the historical Missouri riverbed channel. Section 61-33.1-01(2), N.D.C.C., specifically defines "historical Missouri riverbed channel" and limits it to a specific geographical location, from the Garrison Dam to the southern border of sections 33 and 34, township 153 North, range 102 West. Chapter 61-33.1, N.D.C.C., governs the State's ownership of mineral interests of the riverbed segments within the defined geographic area and limits it to property below the OHWM of the historical Missouri riverbed channel.

[¶27] In this case, the disputed property is located in sections 12 and 13 of township 153 North, range 102 West in Williams County, which is within the geographic area included in the definition of the "historical Missouri riverbed channel." Because the Wilkinson property is located within the defined geographic area, as a matter of law N.D.C.C. ch. 61-33.1 applies and governs the State's claim of ownership of the property. The district court did not err in determining N.D.C.C. ch. 61-33.1 applies.

[¶28] Chapter 61-33.1, N.D.C.C., provides a process for determining the State's sovereign land mineral ownership within this geographic area and the return of royalties or other funds incorrectly paid to the State. Section 61-33.1-03, N.D.C.C., provides a process to determine the OHWM of the historical Missouri riverbed channel, which is used to determine whether the State has an ownership interest. "The corps survey must be considered the presumptive determination of the ordinary high water mark of the historical Missouri riverbed channel, subject only to the review process under this section and judicial review as provided in this chapter." N.D.C.C. § 61-33.1-03(1). An engineering and surveying firm selected by the Department of Mineral Resources reviewed the delineation of the OHWM of the corps survey segments to determine whether there was clear and convincing evidence that a portion of the corps survey does not reasonably reflect the OHWM of the historical Missouri riverbed channel and then provide its findings to the department. N.D.C.C. § 61-33.1-03(2)-(5). The engineering and surveying firm completed a report containing its findings about the OHWM, which is known as the Wenck Study.

11

[¶29] After a public hearing, the department was required to make a final recommendation to the Industrial Commission on each of the review findings. N.D.C.C. § 61-33.1-03(7). Under N.D.C.C. § 61-33.1-03(7), the Industrial Commission may adopt or modify the recommendations, but the Commission's "action on each finding will determine the delineation of the ordinary high water mark for the segment of the river addressed by the finding." On September 27, 2018, the Industrial Commission issued Order No. 29129, adopting in part and amending in part the Wenck Study's recommendations, and determining the OHWM of the historical Missouri riverbed channel.

[¶30] After the Industrial Commission's adoption of the final review findings, the statutory process states the Land Board may contract with an engineering and surveying firm to analyze the findings and determine the acreage above and below the OHWM as delineated by the Industrial Commission's final findings. N.D.C.C. § 61-33.1-03(8). "The acreage determination is final upon approval by the board." *Id.* After the Land Board adopts the final acreage determinations, N.D.C.C. § 61-33.1-04(1) requires royalty proceeds attributable to oil and gas mineral tracts lying entirely above the OHWM of the historical Missouri riverbed channel to be released to the owners of the tracts or to the relevant operators to distribute to the owners. The final acreage determinations had not been made and approved by the Land Board at the time the district court granted summary judgment in this case.

[¶31] The district court concluded the property is above the OHWM of the historical Missouri riverbed channel, and therefore the disputed mineral interests are not owned by the State. Undisputed evidence established the Wenck Study determined the Wilkinson property is located above the OHWM of the historical Missouri riverbed channel. The Industrial Commission's order adopted the Wenck Study's determinations for the segments related to the Wilkinson property. As a matter of law, the Wilkinson property is above the OHWM and the State does not have a claim to that property outside of the acreage determination under N.D.C.C. § 61-33.1-04(8).

12

[¶32] We affirm the district court's conclusions that N.D.C.C. ch. 61-33.1 applies in this case and that the Wilkinson property is above the OHWM of the historical Missouri riverbed channel and is not State sovereign lands. However, the court erred by determining "That concludes the statutory process as applied to the Wilkinsons and their claims in the Amended Complaint." Determining the property is above the OHWM of the historical Missouri riverbed channel, does not end the statutory process. Chapter 61-33.1, N.D.C.C., contains further processes that apply to this property. The final acreage determinations have not been made and royalties and bonus payments may need to be released to the plaintiffs as required by N.D.C.C. ch. 61-33.1. The rest of the statutory process must be completed and the district court's decision to end this case before determining the plaintiffs' damages was premature.

IV

[¶33] The State Engineer argues the district court misapplied the law and did not properly determine whether N.D.C.C. ch. 61-33.1 applies to the disputed property because N.D.C.C. § 61-33.1-02 limits the chapter's application to land "subject to inundation by the Pick-Sloan Missouri basin project dams." The State Engineer contends the determination of whether any specific land is "subject to inundation" is a factual determination that cannot be decided on summary judgment. The State Engineer claims the water that inundates the Wilkinson property is caused by the meandering Missouri River and not Lake Sakakawea, and the statute would be unconstitutional if it is interpreted to apply to those areas inundated by the Missouri River and not Lake Sakakawea.

[¶34] "When engaging in statutory interpretation, this Court has consistently recognized that it must be presumed the legislature intended all that it said, said all that it intended to say, and meant what it has plainly expressed." *Estate of Christeson v. Gilstad*, 2013 ND 50, ¶ 12, 829 N.W.2d 453. *See also Brossart v. Janke*, 2020 ND 98, ¶ 12, 942 N.W.2d 856. ("We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted." (internal

13

citation omitted).) As is explained above, N.D.C.C. ch. 61-33.1 applies to property located within the geographical area defined by statute. Chapter 61-33.1 provides a process for determining what property is part of the historical Missouri riverbed channel, which the State owns as sovereign lands, and for determining whether money paid to the State in error should be returned to the property owner. The State Engineer's interpretation would dismantle the statutory process and instead would require each mineral interest claimant to sue and prove the property is subject to inundation by the Pick-Sloan Missouri basin project dams, and not the Missouri River. Clearly, that was not the legislature's intent. *See Sorum, et al. v. State, et. al.,* 2020 ND 175, ¶ 40 (holding the State no longer claims the minerals and, through N.D.C.C. ch. 61-33.1, it recognized its obligation to pay its debts and deal fairly with people and return the funds).

[¶35] Chapter 61-33.1, N.D.C.C., is not ambiguous. That chapter provides the process for determining ownership of property within the geographical boundary included in the definition of historical Missouri riverbed channel. Individuals alleging ownership of mineral interests within that geographic area are not required to also prove the property is subject to inundation by the Pick-Sloan Missouri basin project dams. The district court did not err by failing to accept the State Engineer's interpretation of the chapter.

V

[¶36] The Land Board argues ownership cannot be determined until after the periods to challenge the Industrial Commission's order and the final acreage determinations have been exhausted because the OHWM of the historical Missouri riverbed channel is not final until then. It contends N.D.C.C. § 61-33.1-05(3) is clear that title to property cannot be finalized until all challenges are exhausted under the statute, because at that point the location of the OHWM and the number of acres within each parcel will be permanently established.

[¶37] Section 61-33.1-05, N.D.C.C., limits judicial actions related to this chapter. An interested party seeking to challenge the review findings,

14

recommendations, or the Industrial Commission's actions under N.D.C.C. ch. 61-33.1 must bring suit within two years after adoption of the final review findings by the Industrial Commission. N.D.C.C. § 61-33.1-05(1). A party seeking to challenge the final acreage determinations must sue within two years after the acreage determinations are approved by the Land Board. N.D.C.C. § 61-33.1-05(2). The statute further provides:

> "Notwithstanding any other provision of law, an action brought in district court under this section is the sole remedy for challenging the final review, recommendations, determination of the ordinary high water mark, and final acreage determination under this chapter, and preempts any right to rehearing, reconsideration, administrative appeal, or other form of civil action provided under law."

N.D.C.C. § 61-33.1-05(3). The statute expressly limits a party's remedy to the process specified in the chapter.

[¶38] Reading the chapter as a whole, individual ownership may be determined before all challenges are exhausted under N.D.C.C. § 61-33.1-05 and the limitation period expires. Under N.D.C.C. § 61-33.1-04(1), some royalty proceeds are required to be released within six months after the adoption of the acreage determination by the Land Board, absent a showing of other defects affecting mineral title. For those payments to occur, ownership must be determined before the two years for challenges has expired.

[¶39] The Land Board claims "any interested party may still have an action challenging the Wenck Study or the acreage determinations that impact" the disputed property. Under N.D.C.C. § 61-33.1-05 an interested party can only challenge the review findings or acreage determination for the section of land in which the interested person asserts an interest. They cannot challenge the entire review findings or acreage determinations. Section 61-33.1-04(2)(b), N.D.C.C., states, "The filing of an action under section 61-33.1-05 tolls the deadline for any oil and gas well directly affected by the action challenging the review finding or final acreage determination." It only tolls the deadline for oil and gas wells directly affected by the action.

15

[¶40] Reading chapter 61-33.1 as a whole, we reject the Land Board's argument that all actions under N.D.C.C. § 61-33.1-05 must be exhausted before title to any property can be finalized.

VI

[¶41] We have considered the parties' remaining issues and arguments and conclude they are either unnecessary to our decision or are without merit. The judgment is affirmed in part, reversed in part, and the case is remanded.

[¶42]   Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Gerald W. VandeWalle
        Jon J. Jensen, C.J.