# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2022 ND 86

Gene J. Sauvageau and Brenda J. Sauvageau,                    Petitioners

     v.

The Honorable Susan L. Bailey, District Court Judge,

East Central Judicial District,

and Cass County Water Resource District,                    Respondents

### No. 20220080

Petition for Supervisory Writ.

PETITION FOR SUPERVISORY WRIT GRANTED.

Opinion of the Court by Crothers, Justice.

Alan Baker (argued) and Cash H. Aaland (on brief), Fargo, ND, for petitioners.

Christopher M. McShane, West Fargo, ND, for respondent Cass County Water Resource District.

**Crothers, Justice.**

[¶1] Brenda and Gene Sauvageau petition this Court to exercise our original jurisdiction and issue a writ of supervision directing the district court to stop the Cass County Joint Water Resource District from using quick take eminent domain to acquire their property. The Sauvageaus claim the District is prohibited from using quick take eminent domain to acquire a permanent right of way easement over their entire property. We conclude the quick take process is not available because the District is taking more than a right of way in the Sauvageaus' property. We grant the Sauvageaus' petition, direct the district court to vacate its order denying the Sauvageaus' motion to dismiss the District's complaint and remand for further proceedings.

I

[¶2] The Sauvageaus own 7.8 acres of property in Cass County. In 2019, the Sauvageaus learned the Fargo-Moorhead Diversion flood control project would flood their property. In December 2020 the fair market value of the fee simple interest of the Sauvageaus' property was appraised at $460,000. On February 1, 2021, the District offered the Sauvageaus $460,000 to purchase the property in fee simple. On April 14, 2021, the District offered the Sauvageaus $460,000 to purchase a right of way easement over their property. The Sauvageaus declined the District's offers.

[¶3] In October 2021, the District sued the Sauvageaus, seeking to use the quick take eminent domain power under N.D.C.C. ch. 61-16.1 to acquire a permanent right of way easement covering all of the Sauvageaus' property. The District claimed a permanent right of way easement over the Sauvageaus' property was necessary for the Fargo-Moorhead Diversion flood control project. On November 11, 2021, the District sent the Sauvageaus a letter notifying them "they will be required to vacate their home [on] March 15, 2022."

[¶4] The Sauvageaus moved to dismiss the District's complaint, claiming the District could not use quick take because it sought to take more than an

easement. The Sauvageaus also moved for a preliminary injunction prohibiting the District from evicting them from their property on March 15, 2022. The Sauvageaus argued the District lacked authority to take their property through quick take eminent domain and an injunction was necessary to prevent the destruction of their home and other buildings on the property.

[¶5] The district court denied the Sauvageaus' motion to dismiss, concluding the District had authority to acquire the Sauvageaus' property through quick take eminent domain. The court also denied the motion for a preliminary injunction, concluding the Sauvageaus did not demonstrate a likelihood they would prevail on the merits of their claim that the District was precluded from using quick take to acquire their property.

[¶6] On March 7, 2022, the Sauvageaus petitioned this Court to exercise our supervisory jurisdiction. On March 14, 2022, we entered an order preventing the District "from evicting or otherwise preventing Gene and Brenda Sauvageau from the quiet enjoyment of their home."

II

[¶7] The Sauvageaus have petitioned this Court to exercise our supervisory jurisdiction.

> "Under N.D. Const. art. VI, § 2, and N.D.C.C. § 27-02-04, this Court may examine a district court decision by invoking our supervisory authority. We exercise our authority to issue supervisory writs rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases when no adequate alternative remedy exists. Our authority to issue a supervisory writ is 'purely discretionary,' and we determine whether to exercise supervisory jurisdiction on a case-by-case basis, considering the unique circumstances of each case. Exercise of supervisory jurisdiction may be warranted when issues of vital concern regarding matters of important public interest are presented."

*Wilkinson v. Bd. of Univ.*, 2020 ND 179, ¶ 17, 947 N.W.2d 910 (quoting *Nygaard v. Taylor*, 2017 ND 206, ¶ 11, 900 N.W.2d 833).

2

[¶8]   This case presents a significant issue regarding the District's use of its quick take eminent domain powers under N.D.C.C. § 61-16.1-09(2)(b). The District's attempt to use quick take under N.D.C.C. § 61-16.1-09(2)(b) relates to matters of important public interest and our case law provides little guidance on the issue.

[¶9]   Article I, § 16, N.D. Const., states "[p]rivate property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner." A jury decides the amount of compensation due for the taking, unless a jury is waived. *Id.* Section 16 also authorizes the state to acquire a right of way by quick take. Quick take allows the state to "take possession upon making an offer to purchase and by depositing the amount of such offer with the clerk of the district court of the county wherein the right of way is located." *Id.* The owner of the right of way may have a jury decide the quick take damages. *Id.* Quick take offers an owner less protection because the condemnor can take possession of the property before trial on the amount of just compensation due. *Johnson v. Wells Cty. Water Res. Bd.*, 410 N.W.2d 525, 529 (N.D. 1987).

[¶10] Taking private property for public use involves a conflict between public interests and private property rights. The public interest in this case involves construction of flood controls, as reflected in N.D.C.C. § 61-16.1-01:

> "The legislative assembly of North Dakota recognizes and declares that the general welfare and the protection of the lives, health, property, and the rights of all people of this state require that the management, conservation, protection, development, and control of waters in this state, navigable or non-navigable, surface or subsurface, the control of floods, the prevention of damage to property therefrom, involve and necessitate the exercise of the sovereign powers of this state and are affected with and concern a public purpose. To realize these objectives it is hereby declared to be the policy of the state to provide for the management, conservation, protection, development, and control of water resources and for the prevention of flood damage in the watersheds of this state and thereby to protect and promote the health, safety, and general welfare of the people of this state."

3

# III

[¶11] The Sauvageaus concede the District has authority to take their property through eminent domain. However, the Sauvageaus claim the District must acquire their property in fee simple under the eminent domain provisions of N.D.C.C. ch. 32-15 rather than a permanent right of way easement by quick take under N.D.C.C. § 61-16.1-09(2)(b).

[¶12] Chapter 32-15, N.D.C.C., governs eminent domain. Under N.D. Const. art. I, § 16 and N.D.C.C. § 32-15-01(2), private property may not be taken for public use without just compensation. The interests in land subject to taking by eminent domain include fee simple, easements, and the right of entry. N.D.C.C. § 32-15-03. A fee simple interest may be taken "for reservoirs and dams and permanent flooding occasioned thereby." N.D.C.C. § 32-15-03(1). A governmental entity taking property by eminent domain may take possession of the property after entry of judgment. N.D.C.C. § 32-15-29.

[¶13] Article I, § 16, N.D. Const., authorizes quick take for the acquisition of a right of way:

> "When the state or any of its departments, agencies or political subdivisions seeks to acquire right of way, it may take possession upon making an offer to purchase and by depositing the amount of such offer with the clerk of the district court of the county wherein the right of way is located. The clerk shall immediately notify the owner of such deposit. The owner may thereupon appeal to the court in the manner provided by law, and may have a jury trial, unless a jury be waived, to determine the damages, which damages the owner may choose to accept in annual payments as may be provided for by law. Annual payments shall not be subject to escalator clauses but may be supplemented by interest earned."

"The general objective of § 16 was to . . . make quick take available to the state, its departments, agencies and political subdivisions." *Johnson*, 410 N.W.2d at 528. Section 16 provides the state or a political subdivision "may take property via quick take if the Legislature sees fit to so provide." *Id.* Quick take offers less protection to property owners than possession after judgment under N.D.C.C. § 32-15-29. *Id.* at 529.

4

[¶14] The legislature granted the District eminent domain powers to acquire private property for flood control projects. N.D.C.C. § 61-16.1-09(2). Under N.D.C.C. § 61-16.1-09(2)(a), the District may use eminent domain to acquire property in fee simple by complying with the requirements of N.D.C.C. ch. 32-15.

[¶15] The legislature also granted the District the power to acquire an easement for a right of way for flood control projects by quick take eminent domain as authorized by N.D. Const. art. I, § 16. N.D.C.C. § 61-16.1-09(2)(b). Before acquiring an easement for a right of way by quick take, a water resource district must attempt to purchase the easement by engaging in informal and formal negotiations. N.D.C.C. § 61-16.1-09(2)(b)(1).

[¶16] This Court has addressed the acquisition of a right of way by quick take for highway purposes. In *Tormaschy v. Hjelle*, 210 N.W.2d 100, 101 (N.D. 1973), the State sought to acquire a 2.44 acre parcel of land for a rest area sewage lagoon near Interstate 94. This Court held the term "right of way" as used in the constitutional quick take provision "was meant to include not only that strip of land necessary for driving lanes, but also other land necessary for the construction of accommodations reasonably necessary to make driving safe, comfortable, and helpful." *Id.* at 103.

[¶17] In *Minot Sand & Gravel Company v. Hjelle*, 231 N.W.2d 716, 720 (N.D. 1975), the State used quick take to acquire a fee simple interest in strips of land abutting and adjacent to a section line easement for purposes of widening the road. The owner, who was involved in the commercial aggregate business, claimed the State also became the fee simple owner of the land within the section line easement. *Id.* at 721. This Court concluded the State acquired fee simple in the land described in the instrument, which did not include the property within the section line easement. *Id.* at 722. This Court also held that although the State did not acquire the section line easement, its taking of the adjacent land "may have deprived the owner of many, if not all, benefits and uses of the property in the section line easement, particularly as to the aggregate lying beneath the section line easement." *Id.* We stated "the

5

damages sustained by the landowner could be the equivalent of the State taking a fee simple of the section line easement." *Id.*

[¶18] This Court discussed quick take by a water resource board in *Johnson v. Wells County Water Resource Board*, 410 N.W.2d 525. In *Johnson*, at 526, a water resource board sought to acquire flowage easements by quick take under N.D. Const. art. I, § 16. This Court concluded art. I, § 16 was not self-executing, and the legislature had not yet authorized quick take for a water resource board. *Id.* at 528-29. *Johnson* was decided before the legislature enacted the quick take provisions of N.D.C.C. § 61-16.1-09(2). 1989 N.D. Sess. Laws ch. 746, § 2.

[¶19] Here, the District's complaint alleges it followed the procedures enumerated in N.D.C.C. § 61-16.1-09(2)(b) to acquire the Sauvageaus' property by quick take. The complaint includes the legal description of the Sauvageaus' property and alleges the right of way will encompass the entire property. *See* N.D.C.C. § 47-05-02.1(1) (requiring "[t]he area of land covered by the easement . . . on the use of real property shall be properly described and shall set out the area of land covered by the interest in real property").

[¶20] The District's complaint sought a permanent right of way easement "upon, over, in, under, across, and through the [Sauvageaus' property] for the following purposes:

> 'constructing, cleaning, inspecting, reconstructing, managing, modifying, operating, maintaining, repairing, and improving the Diversion Project and related appurtenances, including but not limited to an embankment for water containment and mobility improvements determined in the discretion of the District to be necessary as a result of the Diversion Project in order to accommodate the Diversion Project (including the right to grant or permit third party utility providers to utilize the Permanent Right of Way Easement Property for utility purposes) and other improvements; excavating, piling, storing, depositing, spoiling, spreading, and removing excavated dirt, soil, clay, silt, and other materials; inundating the Property with water; storing and removing equipment, materials, and supplies; removing trees, underbrush, obstructions, and any other vegetation, structures, or

6

obstacles from the Property; and the right to perform any other work necessary and incident to the construction, cleaning, inspection, reconstruction, modification, operation, management, maintenance, repair, or improvement of the Diversion Project, together with all necessary and reasonable rights of ingress and egress to and from the Property.'"

The complaint requested the court to immediately condemn the permanent right of way and order the "Permanent Right of Way Easement be the dominant estate as to the Owner and all other defendants with an interest in the Property."

[¶21] In denying the Sauvageaus' motion to dismiss, the district court concluded that on the basis of the pleadings the District could use quick take to acquire a permanent right of way easement over the Sauvageaus' property:

> "Taken as true, the pleadings demonstrate the right of way being sought is for a necessary component of and an incidental feature of a flood control project. *See Tormaschy*, 210 N.W.2d at 103 (permitting the taking of land incidental to the 'broad objective' contemplated by the words 'right of way'); *see also* N.D.C.C. § 61-16.1-09(12) (allowing a district to acquire by condemnation easements and rights of way within or without the limits of the district for all purposes authorized by law or necessary to the exercise of any other stated power); N.D.C.C. § 61-16.1-09(2) (defining a flood control project to include the incidental features of any such undertaking). The pleadings also demonstrate that the right of way is necessary and proper to preserve the benefits that are sought to be derived from the flood control project. *See* N.D.C.C. § 61-16.1-09(9) (providing water districts with authority to do all things reasonably necessary and proper to preserve the benefits to be derived from the conservation, control, and regulation of the water resources of this state)."

The court concluded the Sauvageaus' argument that the District's taking left them with no value in the property went to the issue of damages because the District had authority to take a right of way easement.

[¶22] In their motion for a preliminary injunction, the Sauvageaus submitted the appraisal report for their property. The District appraised the Sauvageaus'

7

property at $460,000. The appraisers hired by the District valued the property "based on the fee simple interest." The appraisal report discussed the District's acquisition of a permanent right of way easement:

> "The [District] has provided us with further clarification regarding the type of permanent easement being acquired. The easement would allow the construction, operation and maintenance of the flood diversion. The owner would only retain the right of reverter, meaning they would get the property back if it ever ceases to be used for the flood control project. However, given the perceived permanence of this [flood control] project, we consider the permanent easement equivalent to a transfer of fee title.

> "It is our opinion that a buyer and seller of a property via permanent easement, with the above conditions, would consider the property rights transferred to be akin to a transfer of fee title. Therefore, our value estimate of the subject property, under the assumption that the property is acquired by permanent easement as described above, is 100% of our opinion of market value assuming transfer of fee title, or $460,000."

[¶23] The District's complaint includes numerous purposes for which the Sauvageaus' property will be used. Some specific uses include "inundating the Property with water," "excavating, piling, storing, depositing, spoiling, spreading, and removing excavated dirt, soil, clay, silt, and other materials," and "removing trees, underbrush, obstructions, and any other vegetation, structures, or obstacles from the Property," including the Sauvageaus' home and other structures. The appraisal valued the Sauvageaus' reverter interest in the property at $0. At oral argument the District's attorney stated the Sauvageaus could use their property for bird watching or hunting but only to the extent their use did not conflict with the District's use.

[¶24] In *Cass County Joint Water Resource District v. Aaland*, 2021 ND 57, ¶ 13, 956 N.W.2d 395, we discussed "the harm presented by a permanent physical occupation" of one's property:

"Property rights in a physical thing have been described as the rights to possess, use and dispose of it. To the extent that the government permanently occupies physical property, it effectively destroys each of these rights. First, the owner has no right to possess the occupied space himself, and also has no power to exclude the occupier from possession and use of the space. The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights. Second, the permanent physical occupation of property forever denies the owner any power to control the use of the property; he not only cannot exclude others, but can make no nonpossessory use of the property. . . . Finally, even though the owner may retain the bare legal right to dispose of the occupied space by transfer or sale, the permanent occupation of that space by a stranger will ordinarily empty the right of any value, since the purchaser will also be unable to make any use of the property.

"Moreover, an owner suffers a special kind of injury when a stranger directly invades and occupies the owner's property. . . . Property law has long protected an owner's expectation that he will be relatively undisturbed at least in the possession of his property. To require, as well, that the owner permit another to exercise complete dominion literally adds insult to injury."

(quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435-36 (1982)).

[¶25] The Sauvageaus also submitted evidence establishing the public road to their property will be closed. A property owner is entitled to reasonable and convenient access to his or her property considering all of the uses to which the property is needed or likely to be needed. *Sauvageau v. Hjelle*, 213 N.W.2d 381, 390-91 (N.D. 1973) (citing *Chandler v. Hjelle*, 126 N.W.2d 141 (N.D. 1964)).

[¶26] On the basis of the pleadings and the facts in the record, as a matter of law the District is taking much more than an easement or right of way in the Sauvageaus' property. The District is not acquiring a strip or a parcel of the Sauvageaus' property for a right of way. The District intends to close the public road, remove all structures from the property, engage in disturbance of the surface and subsurface, and inundate the property with water. The District is

9

taking the entire property for full value while leaving the Sauvageaus with only a reverter interest with no value.

[¶27] The District's taking here goes beyond the scope of N.D.C.C. § 61-16.1-09(2)(b) for acquiring a right of way easement by quick take. Under N.D.C.C. § 61-16.1-09(2)(a), the District is required to use the eminent domain procedures of N.D.C.C. ch. 32-15 when acquiring a greater interest in property. By labeling the interest in the Sauvageaus' property as a "permanent right of way easement," the District is attempting to evade the requirements and property owner protections of N.D.C.C. § 61-16.1-09(2)(a).

IV

[¶28] We grant the Sauvageaus' petition, direct the district court to vacate its order denying the Sauvageaus' motion to dismiss the District's complaint and remand for further proceedings. We decline to address the Sauvageaus' remaining arguments.

[¶29] Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Daniel J. Crothers
     Jerod E. Tufte
     James S. Hill, D.J.

[¶30] The Honorable James S. Hill, D.J., sitting in place of McEvers, J., disqualified.